IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **FLETCHER RAY STEWART,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Civil Action No. 3:05-CV-0520-MHT-DRB** |
| ) | |
| **JIMMY ABBETT, et al.,** ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' SPECIAL REPORT**

COME NOW Tallapoosa County Sheriff Jimmy Abbett, Jail Administrator Blake Jennings, and Carolyn Moss, Defendants in the above-styled cause, and submit their Special Report to the Court as follows:

### I. INTRODUCTION

Plaintiff in this action, Fletcher Ray Stewart, filed his Complaint in the United States District Court for the Middle District of Alabama on June 2, 2005. On June 15, 2005, this Court ordered Defendants to file a Special Report within forty-five days from the date of the order.

On April 7, 2005, Plaintiff was arrested on charges of assault in the 2nd degree, disorderly conduct, and resisting arrest. (Exhibit A, Inmate File of Fletcher Ray Stewart, "Inmate File", Uniform Arrest Report dated April 7, 2005.) Plaintiff was booked into the Tallapoosa County Jail that day. (Exhibit B, Inmate File, In-Processing Check List dated April 7, 2005.) On June 9, 2005, Plaintiff pled guilty to the charges of resisting arrest and disorderly conduct. (Exhibit C, Alacourt SJIS Reports; Exhibit D, Inmate File, Explanation of Rights and Plea of Guilty.) Plaintiff was released that day, after approximately two months of incarceration, to

serve six months of unsupervised probation and was given credit for time served. (Exhibit E, Court Action/Arrest Authentication dated June 9, 2005; Exhibit F, Out-Processing Check List.)

## II.   PLAINTIFF'S ALLEGATIONS

Plaintiff's sole allegation is that he was not given psychiatric care. (Plaintiff's Complaint at pp. 3 and 4.)  He alleges that he should not be in jail, and that instead he should be in a hospital. (Plaintiff's Complaint at p. 3.)

## III.   DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by Plaintiff as being untrue and completely without basis in law or fact. Defendants affirmatively deny that they acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. (Exhibit G, Affidavit of Sheriff Jimmy Abbett[1] [2], "Abbett aff.", ¶ 5; Exhibit H, Affidavit of Blake Jennings[3], "Jennings aff." ¶ 4; Exhibit I, Affidavit Carolyn Moss[4], "Moss aff." ¶ 4.) Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act and additional defenses presented below. Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

**A.   FACTS**

**1.   Medical Policy and Procedures of the Tallapoosa County Jail**

It is the policy of the Tallapoosa County Jail that access to appropriate health care services are provided for the inmates of the Jail for their physical and emotional well-being. An

---

[1] Jimmy Abbett is the duly elected Sheriff of Tallapoosa County, Alabama. (Abbett aff. ¶ 2.)
[2] Attached hereto is a copy of the unsigned affidavit of Jimmy Abbett. Upon receipt of the executed copy of Jimmy Abbett's affidavit, the Defendants will supplement this Special Report.
[3] Blake Jennings has been employed by the Tallapoosa County Sheriff's Department since 1998. On March 19, 2005, he became the Jail Administrator of the Tallapoosa County Jail. (Jennings aff. ¶ 2).
[4] Carolyn Moss is employed at the Tallapoosa County Jail and has achieved the rank of Lieutenant. (Moss aff. ¶ 2.)

inmate requesting any type of health care services may submit either an Inmate Request Form or Medical Request/Charge Sheet stating the service desired. At the time of admission to the jail, each inmate undergoes a medical screening completed by the booking officer. In the event of a medical emergency, or a perceived medical emergency, the shift supervisor arranges for medical services without delay. The shift supervisor ensures that the medical protocol is followed to ensure a safe and secure manner is maintained. Except in the case of an emergency, each inmate requesting medical services is screened by the jail nurse who then makes a referral to a physician if it is determined that a physician visit is appropriate. All medical appointments, including appointments with the jail nurse, are logged by the jail staff in the inmate log. (Jennings aff. ¶ 5.)

Inmates are given prescription medication as prescribed. Medication is distributed according to instructions from the prescribing physician and is distributed by a jail staff member as directed by the jail nurse. Staff members of the Tallapoosa County Jail take no deliberate action to block, deny, or delay access of an inmate to health care. The Jail Nurse is on duty from 8:00 a.m. until 5:00 p.m. on Mondays through Fridays. She is on call at all times of the day and night. (Jennings aff. ¶ 6.)

An inmate may at any time request mental health care. Upon such request, the jail staff will ask that Mental Health Services provide that inmate with a consultation with a mental health provider. (Jennings aff. ¶ 7.)

2.    **Plaintiff's Medical Treatment at the Tallapoosa County Jail**

On the day that Plaintiff was admitted, Nurse Cathy Dubose, the Jail Nurse, noted that Plaintiff was to be given his routine medications, Dilantin three times a day, and Migraine capsules as needed. (Exhibit J, Inmate Medical File of Fletcher Ray Stewart, "Medical File",

Medications/Physicians Orders, Order dated April 7, 2005.) On April 18, 2005, Nurse Dubose took Plaintiff's history and noted his mental handicap. (Exhibit K, Medical File, Progress Notes, Note dated April 18, 2005.) However, Nurse Dubose did not note that any treatment was needed for this handicap, and Nurse Dubose did not order any treatment. (Medical File, Medications/Physicians Orders; Medical File, Progress Notes.) On April 21, 2005, Plaintiff saw Nurse Dubose for complaints of chest pain. (Medical File, Progress Notes, Note dated April 21, 2005.) Nurse Dubose placed Plaintiff in the medical observation cell until Plaintiff told her that he felt better. (Id.) Plaintiff told Nurse Dubose that he got hot the previous evening and that that had happened at home sometimes. (Id.) Nurse Dubose checked Plaintiff's blood pressure. (Id.) His blood pressure was 90/50. (Id.)  Later that day, Nurse Dubose checked Plaintiff's pacemaker, and noted that the batteries were good. (Id.) On May 13, 2005, Plaintiff saw Nurse Dubose complaining of biting his tongue. (Medical File, Progress Notes, Note dated May 13, 2005.) Nurse Dubose gave Plaintiff Chloroseptic for seven days. (Id.; Medical File, Medications/Physicians Orders dated May 13, 2005.) On May 19, 2005, Nurse Dubose checked Plaintiff's pacemaker again. (Medical File, Progress Notes dated May 19, 2005.)

Plaintiff never requested mental health care, nor were Defendants otherwise aware that Plaintiff was in need of mental health care. (Abbett aff. ¶ 4; Jennings aff. ¶ 8; Moss aff. ¶ 5.)[5]

    **B.    LAW**

        **1.    Any claim by Plaintiff against Defendants in their official capacity must fail because they are not "persons" under 42 U.S.C.A. § 1983.**

Any claims against Defendants in their official capacities must fail because 42 U.S.C.A. § 1983 prohibits a *person*, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C.A. § 1983 (emphasis added). The United States

---

[5] The remainder of Plaintiff's Inmate File is attached hereto as Exhibit L.

Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Any claim against Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983 and accordingly claims against them in their official capacity fail to state a claim upon which relief can be granted. Id.; Carr v. City of Florence, 918 F.2d 1521, 1525 n.3 (11th Cir. 1990).

### 2. Plaintiff's claims for injunctive relief are moot.

Because Plaintiff has been released from the Tallapoosa County Jail, his claims for injunctive relief are moot. Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986).

### 3. Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.[6]

#### a. Plaintiff has failed to exhaust all Administrative Remedies.

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him. First, the Plaintiff has not exhausted the grievance procedures provided at the Tallapoosa County Jail. Secondly, he has not alleged that he pursued any grievance through the State Board of Adjustment. See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies).

Internal grievance procedures at the Tallapoosa County Detention Facility are available to all inmates. It is the policy of the Tallapoosa County Sheriff's Department that inmates are

---

[6] Although Plaintiff has now been released, because he filed this lawsuit prior to his release, the provisions of the PLRA do apply to Plaintiff. See Harris v. Garner, 216 F.3d 970 (11th Cir. 000).

permitted to submit grievances and that each grievance will be acted upon. Inmates are given an Inmate Grievance Form to complete and return to a Tallapoosa County Detention Facility staff member for any grievances they may have. Jail Administrator Jennings does not recall a grievance being filed by Plaintiff in regards to the allegations made the basis of his Complaint.

In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60. The Sheriff of Tallapoosa County, as are his alter egos, is a state officer and therefore would be entitled to sovereign immunity. See Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998). Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a). See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies).

      **b.**    **Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.**

42 U.S.C. § 1997e(e) of the Prison Litigation Reform Act requires that a plaintiff demonstrate that he suffered physical injury before instituting a complaint based upon jail conditions. The PLRA states the following concerning physical injury:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. 42 U.S.C. § 1997e(e).

The Eleventh Circuit has determined that the physical injury requirement of § 1997e(e) requires that a plaintiff demonstrate a physical injury that is more than *de minimis* although the

injuries do not have to be significant. Harris v. Garner, 190 F.3d 1279, 1286 (11th Cir.), vacated, 197 F.3d (11th Cir. 1999), reinstated in relevant part, Harris v. Garner, 216 F.3d 970 (11th Cir. 2000) (en banc). Plaintiff has certainly not demonstrated that he has suffered a physical injury that is more than *de minimis* - or any physical injury whatsoever - as a result of the allegations described in his Complaint. As a result, Plaintiff's claims are due to be dismissed pursuant to 42 U.S.C § 1997e(e).

       **4.**      **Alternatively, Defendants are entitled to summary judgment based on the defense of qualified immunity.**

            **a.**      **Qualified Immunity Standard**

Once a defendant has asserted the defense of qualified immunity, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right?" Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the plaintiff's constitutional rights? Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of these Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994). A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d 1419, 1424 (11th Cir. 1997). "In this circuit, the law

can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Board of Education, 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided the Defendants with fair warning that their conduct was unlawful. He may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law. Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted). The Eleventh Circuit has identified the latter method as an "obvious clarity" case. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). In order to show that the conduct of the Defendants was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent." Willingham, 321 F.3d at 1301. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (citations omitted).

Defendants were carrying out their duties as public officials at all times relevant to Plaintiff's complaint. Therefore, the burden shifts to the Plaintiff to demonstrate a constitutional violation or showing that clearly established law provided the Defendants with fair warning that their conduct was unlawful. Plaintiff has not met this burden. There is no clearly established law that would provide Defendants with fair warning that their conduct was unlawful because they did not provide mental health care to the Plaintiff where (1) the Nurse had examined the Plaintiff and

had found no need for mental health care treatment; (2) the Plaintiff had made no request for mental health care treatment; and (3) Defendants were not otherwise aware the Plaintiff was in need of mental health care treatment. Therefore, Defendants are entitled to qualified immunity.

> **b.  Plaintiff has failed to establish any deliberate indifference by Defendants to a serious medical condition from which Plaintiff suffered.**

In order to prevail under 42 U.S.C. § 1983 on his medical claim, Plaintiff must demonstrate that Defendants were deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

> A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. A prison or medical official may be held liable under the Eighth Amendment for actions with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Mere negligence does not suffice to prove deliberate indifference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("Deliberate indifference describes a state of mind more blameworthy than negligence."). Furthermore, where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985).

Plaintiff has failed to show and there is no evidence showing that Plaintiff has had any serious medical condition. Further, the medical records show that Plaintiff was granted medical treatment on several occasions while incarcerated at the Tallapoosa County Jail. Neither the Nurse nor Defendants were aware of any need that Plaintiff may have had for mental health care treatment. Plaintiff was seen by the Jail Nurse on numerous occasions during this approximately

two month stay at the Tallapoosa County Jail, and the Nurse did not determine that any type of mental health care treatment was needed. Further, Plaintiff never requested any mental health care treatment. Therefore, it was Plaintiff's responsibility to make it known if he needed treatment. Plaintiff was capable of employing the assistance of a fellow inmate to file a legal complaint, so logically, he had the wherewithal to request mental health care treatment from Defendants. Further, on the occasions where he saw the Jail Nurse, he was able to articulate his medical needs, so it is plainly obvious that he could have made the Nurse aware of any mental health needs he might have had.

An inmate does not have a right to a *specific* kind of treatment. City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; *how [a municipality] obtains such treatment is not a federal constitutional question*") (emphasis added). Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff. See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").

Furthermore, the Defendants do not have any kind of medical education, training or experience. They rely upon the professional judgment of medical professionals who have been retained to provide care to the inmates. While the Eleventh Circuit has not had an opportunity to visit this issue, the Eighth Circuit has addressed a similar claim. In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical director[7] for failing to provide him with a positive air pressure machine needed to treat his sleep apnea. 302 F.3d at 847. Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations. "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions." 302 F.3d at 847 citing, Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription." Id. citing, Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000). Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision. Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F.3d at 849.

Similarly, in the instant case Defendants are not medical professionals, nor are they mental health providers. Plaintiff was evaluated and treated by the Jail Nurse. Jail officials acted in reliance on her orders. Therefore, Defendants acted within constitutional parameters, and were in no way deliberately indifferent.

> **5.    Plaintiff's claim against Defendants must fail because he has not alleged that they had any personal involvement in the alleged constitutional violation.**

---

[7] The medical director was a trained and licensed nurse. 302 F.3d at 846.

Plaintiff does not allege that Defendants were in any way personally involved in Plaintiff's alleged constitutional violation. In fact Plaintiff has not even made any specific allegations against these Defendants. Defendants therefore construe Plaintiff's claim against them as an attempt to hold them liable under a *respondeat superior* theory. To the extent Plaintiff seeks relief on that basis,

> [Supervisory] liability under § 1983 must be based on something more than a theory of *respondeat superior*. Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions and the supervising official and the alleged constitutional violation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.

Dolihite v. Maughon, 74 F.3d 1027, 1052 (11th Cir. 1996). There are absolutely no facts that show that these Defendants personally participated in any alleged constitutional violation. Therefore, Plaintiff's claim against Defendants are due to be dismissed.

### 6. Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. Greason v. Kemp, 891 F.2d 829, 831. (11th Cir. 1990). However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves, 530 U.S. at 151, quoting 9A C. Wright & A.

Miller, Federal Practice and Procedure § 2529, p. 299.[8]  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'"  Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

### IV.   CONCLUSION

Defendants deny each and every allegation made by Plaintiff Fletcher Ray Stewart in the Complaint.  Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

### V.   MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat their Special Report as a motion for summary judgment, and grant unto them the same.

Respectfully submitted this the 1st day of August, 2005.

> **s/Amanda Allred**
> GARY L. WILLFORD, JR. Bar Number:  WIL198
> AMANDA ALLRED Bar No. ALL079
> Attorneys for Defendants
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Drive
> P.O. Box 240909
> Montgomery, Alabama  36124
> Telephone:  (334) 262-1850
> Fax:  (334) 262-1889
> E-mail:  aallred@webbeley.com

---

[8] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'"  Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

- 14 -

## CERTIFICATE OF SERVICE

      I hereby certify that on this the 1st day of August, 2005, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

Fletcher Ray Stewart
Tallapoosa County Jail
316 Industrial Park Drive
Dadeville, AL  36853

                **s/Amanda Allred**
                OF COUNSEL